IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| OHIO SECURITY INSURANCE COMPANY | : | CIVIL ACTION |
| 175 Berkeley Street | : | |
| Boston, MA 02116 | : | NO. |
| and | : | |
| OHIO CASUALTY INSURANCE COMPANY | : | |
| 175 Berkeley Street | : | |
| Boston, MA 02116, | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| ADDISVILLE COMMONS LP | : | |
| 166 Naussau Street | : | |
| Second Floor | : | |
| Princeton, NJ 08542, | : | |
| Defendant | : | |

**COMPLAINT**

**NOW COMES**, the Plaintiffs, Ohio Security Insurance Company ("Ohio Security") and

Ohio Casualty Insurance Company ("Ohio Casualty"), by and through its attorneys, Post &

Schell, P.C., and files the following Complaint against Addisville Commons LP ("Addisville"),

and in support thereof avers as follows:

**PREFATORY NOTICE**

1.      Plaintiffs bring this Complaint pursuant to the Federal Declaratory Judgment Act,

28 U.S.C. §§ 2201, *et seq.*, seeking a declaration respecting their coverage obligations owed to

defendant Addisville under the Commercial General Liability Policy issued by Ohio Security to

Addisville ("Ohio Security Policy") and a Commercial Umbrella Liability Policy issued by Ohio

Casualty to Addisville ("Ohio Casualty Umbrella Policy") (collectively "Ohio Policies") with

respect to a suit filed against Addisville captioned *Shah v. Addisville General Partner, Inc. t/a*

*Addisville Commons LP, et al.*, Civil Action No. 2018-00937-0, Court of Common Pleas, Bucks County, Pennsylvania ("Shah Action").

## <u>NATURE OF THE ACTION</u>

2.      This is an action for declaratory judgment arising out of an actual and existing controversy concerning the parties' rights, status, and liability under insurance policies issued by Plaintiffs to Addisville in connection with the Shah Action wherein the Shahs allege that Addisville obstructed and encroached upon the Shahs' rights under an easement.

3.      Plaintiffs seek a declaration that it has no obligation under the Ohio Security Policy and the Ohio Casualty Umbrella Policy (a) to defend Addisville in connection with the Shah Action or (b) to pay any amount Addisville may be obligated to pay as a result of a judgment or settlement in connection with the Shah Action.

## <u>PARTIES</u>

4.      Ohio Security is an insurance company incorporated under the laws of the State of New Hampshire with its principal place of business at 175 Berkeley Street, Boston, Massachusetts, 02116.

5.      Ohio Casualty is an insurance company incorporated under the laws of the State of New Hampshire with its principal place of business at 175 Berkeley Street, Boston, Massachusetts, 02116.

6.      On information and belief, Addisville is a Pennsylvania corporation with a principal place of business located at 166 Naussau Street, Second Floor, Princeton, New Jersey, 08542.

## JURISDICTION AND VENUE

7.      Jurisdiction over the Defendant by this Court is proper pursuant to 28 U.S.C. § 1332.  There is complete diversity between Ohio Security and Addisville and the amount in controversy exceeds $75,000, exclusive of costs and interest.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) in that Defendant resides in this judicial district and this case concerns an insurance contract, which was entered into in this judicial district.

## THE SHAH ACTION

9.      On or about February 15, 2018, a Civil Complaint was filed in the Shah Action (the "Underlying Complaint").  A true and correct copy of the Underlying Complaint is attached hereto as Exhibit A.

10.     In the Underlying Complaint, the Shahs allege that on or about April 4, 1994, the Shahs entered into a reciprocal access easement with Robert and Paula Gasper, the former owners of a parcel of real property immediately adjacent to the Shah Property and now a part of the property owned by Addisville. (Underlying Complaint, ¶ 12)

11.     It is alleged in the Underlying Complaint that the easement established a perpetual right-of-way on, across, over and to a specifically described 25 foot wide by 225 foot long area existing in equal parts on the Shah Property and the former Gasper Property for the purpose of affording a right of ingress, egress and regress to and from both the Shah Property and the former Gasper Property, to and from Second Street Pike.  (Underlying Complaint, ¶ 13)

12.     The Underlying Complaint also alleges that the easement was only for the use of the owners of the Shah Property and the owners of the former Gasper Property, and does not extend to any other adjoining land owners. (Underlying Complaint, ¶ 15)

13.    The Underlying Complaint alleges that in October 2015, Addisville approached the Shahs about modifying the easement concerning the means of ingress, egress and regress to and from the Shah Property and the former Gasper Property and Second Street Pike in connection with Addisville's development plans. (Underlying Complaint, ¶ 21)

14.    It is alleged that Addisville proposed eliminating access to and from the Shah Property from Second Street Pike as afforded by the easement in exchange for an alternate access via a proposed "connector road."  (Underlying Complaint, ¶ 22)

15.    It is further alleged that Addisville requested that the Shahs vacate the easement. (Underlying Complaint, ¶ 23)

16.    The Underlying Complaint further alleges that Addisville needed the Shahs to agree to modify the easement to allow the adjoining parcels Addisville also acquired to utilize access over and to the right-of-way.  (Underlying Complaint, ¶ 24)

17.    The Shahs allege that Addisville made the request to modify the easement after it had already submitted revised plans to Northampton Township calling for the elimination of the existing right-of-way in connection with Addisville's land development applications. (Underlying Complaint, ¶25)

18.    The Shahs also alleged that Addisville had actual knowledge that it could not obtain approvals from the Township absent the Shahs' agreement to modify the easement. (Underlying Complaint, ¶ 26)

19.    The Shahs allege that at this time, they were in the early stages of their own plan to redevelop their property to replace their existing medical office with a larger office building. (Underlying Complaint, ¶¶ 28-29)

20.     The Shahs allege that Addisville made representations to the Shahs to induce them to modify the easement and that the Shahs would only agree to a modification of the easement if Addisville agreed to certain terms.  (Underlying Complaint, ¶¶ 32-39)

21.      The Underlying Complaint alleges that on January 12, 2016, Addisville and the Shahs came to an agreement memorialized in a letter of intent which set forth Easement Modification Conditions.  (Underlying Complaint, ¶40)

22.     The Shahs allege that Addisville submitted the January 12, 2016 letter of intent and the Township relied upon the same in issuing land development approvals to Addisville. (Underlying Complaint, ¶¶ 43-44)

23.     The Underlying Complaint alleges that during the course of Addisville's work on its site, the Shahs noticed that Addisville's site improvements did not conform to the agreement, but rather encroached upon the Shah Property, and brought this to Addisville's attention. (Underlying Complaint, ¶ 49)

24.     The Underlying Complaint further alleges that Addisville changed its development plan so that the right-of-way connector road which was to have afforded ingress, egress and regress to and from the Shah Property from Second Street Pike now only afforded egress to Second Street Pike from the Shah Property/Addisville Property and Addisville was no longer able to comply with its other promises under the letter of intent.  (Underlying Complaint, ¶52)

25.     It is alleged that Addisville acknowledges these encroachments and that it was not able to comply with a material condition of the proposed agreement to modify/vacate the easement.  (Underlying Complaint, ¶ 54)

26.     The Underlying Complaint alleges that on October 30, 2017, the Shahs informed the Township that they never reached a binding agreement with Addisville regarding the modification and/or vacation of the easement and that the easement remained in full force and effect.  (Underlying Complaint, ¶61)

27.     It is alleged that despite this, Addisville continued to move forward with construction of its project in violation of the easement.  (Underlying Complaint, ¶ 62)

28.     The Underlying Complaint alleges that Addisville issued thinly veiled written threats against the Shahs demanding that the Shahs execute a document extinguishing the easement, which the Shahs refused to do.  (Underlying Complaint, ¶ 64-66)

29.     It is alleged that Addisville then completed construction of the project, and in doing so modified the right-of-way, obstructing and encroaching upon the Shahs' rights under the easement.  (Underlying Complaint, ¶¶ 72-73)

30.     Count I is labeled "Breach of Contract/Specific Performance/Permanent Injunctive Relief;" Count II is labeled "Breach of Contract;" Count III is labeled "Fraud;" Count IV is labeled "Unjust Enrichment;" and Count VI is labeled "Trespass."  Counts V and VII are not asserted against Addisville.

31.     In each of Count of the Underlying Complaint, the Shahs have demanded compensatory damages in excess of $75,000.

## THE OHIO POLICIES

32.     Ohio Security issued the Ohio Security Policy to Addisville, policy number BLS (17) 57 14 50 54, effective from March 30, 2016 to March 30, 2017.  A true and correct copy of the Ohio Security Policy is attached hereto as Exhibit B.

33.     The Ohio Security Policy states in SECTION I—COVERAGES, COVERAGE

A—BODILY INJURY AND PROPERTY DAMAGE LIABILITY:

    1.    Insuring Agreement

        a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend this insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

            (1)    The amount we will pay for damages is limited as described in Section III—Limits Of Insurance; and

            (2)    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments—Coverages A and B.

        b.    This insurance applies to "bodily injury" and "property damage" only if:

            (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

            (2)    The "bodily injury" or "property damage" occurs during the policy period; and

*          *          *

7

34. The Ohio Security Policy also contains the following Exclusion in Section 2. Exclusions:

This insurance does not apply to:

a. Expected or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

35. COVERAGE B—PERSONAL AND ADVERTISING INJURY in the Ohio Security Policy states:

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III—Limits Of Insurance; and

*        *        *

36. Section V—DEFINITIONS in the Ohio Security Policy contains the following definitions:

3. "Bodily injury" means physical injury, sickness or disease sustained by a person, including mental anguish, mental shock,

fright or death that results from such physical injury, sickness or disease.[1]

13.     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14.     "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    a.     False arrest, detention or imprisonment;

    b.     Malicious prosecution;

    c.     The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d.     Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e.     Oral or written publication, in any manner, of material that violates a person's right of privacy;

    f.     The use of another's advertising idea in your "advertisement"; or

    g.     Infringing upon another's copyright, trade dress or slogan in your "advertisement".

17.     "Property damage" means:

    a.     Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.     Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

*    *    *

---

[1] As amended by CG 88 10 04 13.

37.     Ohio Casualty issued a Commercial Umbrella Policy to Addisville, policy number USO (17) 57 14 50 54, effective from March 30, 2016 to March 30, 2017.  A true and correct copy of the Ohio Casualty Umbrella Policy is attached hereto as Exhibit C.

38.     The Ohio Casualty Umbrella Policy states in the COMMERCIAL UMBRELLA COVERAGE PART:

> A.     We will pay on behalf of the "Insured" those sums in excess of the "Retained Limit" that the "Insured" becomes legally obligated to pay by reason of liability imposed by law or assumed by the "Insured" under an "insured contract" because of "bodily injury", "property damage", or "Personal and advertising injury" to which this insurance applies…
>
> B.     This insurance applies to:
>
> > 1.     "Bodily injury" or "property damage" only if:
> >
> > > a.     The "bodily injury" or "property damage" occurs during the policy period.

39.     Section IV. EXCLUSIONS in the Ohio Casualty Umbrella Policy states:

> This insurance does not apply to:
>
> A.     "Bodily injury" or "property damage" expected or intended from the standpoint of the "Insured".  This exclusion does not apply to "bodily injury" resulting from the use of force to protect persons or property.

40.     Section V. DEFINITIONS in the Ohio Casualty Umbrella Policy sets forth the following relevant definitions:

> J.     "Occurrence" means:[2]
>
> > 1.     as respects "bodily injury" or "property damage", an accident, including continuous or repeated exposure to substantially the same general harmful

---

[2] As amended by CU 65 13 07 10.

conditions. "Occurrence also means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, that involves:

    a.    "Property damage" to property that is not "your work", but is caused by "your work", regardless of whether the work is performed by you or on your behalf by a subcontractor; or

    b.    "Property damage" to "your work", but:

        (1)    only if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor, and the "property damage" is included within the "products-completed operations hazard"; and

        (2)    only to the extent that insurance is provided for such "property damage" by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such a policy.

    M.    "Property damage" means:

        1.    physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

        2.    loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

## DENIAL OF COVERAGE BY PLAINTIFFS

41.    By letter dated May 21, 2018, Plaintiffs advised Addisville that they would not participate in the defense of Addisville in connection with the Shah Action or pay any amounts

in settlement of the Shah Action or to satisfy any settlement achieved or judgment rendered against Addisville in the Shah Action.

## NECESSITY OF DECLARATORY JUDGMENT

42.     An actual controversy has arisen between the parties in that Addisville tendered the Underlying Complaint to Plaintiffs for defense and coverage and Plaintiffs have asserted that they have no obligation to defend Addisville in connection with the Shah Action or to pay any liability which Addisville may incur, whether through a settlement, judgment or otherwise, in connection with the Shah Action.

43.     Consequently, Plaintiffs seek a declaration of its rights and obligations.

## COUNT I

## DECLARATORY RELIEF AGAINST ADDISVILLE

44.     The allegations contained in paragraphs 1 through 43 of this Complaint are incorporated herein by reference as though set forth at length herein.

45.     Based upon a review of the Underlying Complaint in comparison to the language of the Ohio Security Policy and the Ohio Casualty Umbrella Policy, there is no coverage and no duty to defend Addisville in connection with the Shah Action.

46.     In order to qualify for coverage under the Ohio Security Policy and the Ohio Casualty Umbrella Policy, the Complaint against the insured must contain allegations of "bodily injury", "property damage", or "personal and advertising injury."

47.     These terms are defined in the Ohio Policies.

48.     Specifically, "property damage" is defined as physical injury to tangible property or loss of use of tangible property that is not physically injured.

49.     It is only the factual allegations in the complaint, and not the cause of action pled, that determines whether the allegations in the complaint trigger a duty to defend.

50.     In the Underlying Complaint, the Shahs seek specific performance/compensation as a result of Addisville's alleged obstruction and encroachment upon the Shahs' rights under an easement.

51.     Under New Jersey law, an easement is not tangible property, and thus, is not "property damage" as defined in the Ohio Policies.  *See Borough of Princeton v. Bd. Of Chosen Freeholders*, 755 A.2d 637, 644 (N.J. Super. Ct. App. Div. 2000) ("An easement is a nonpossessory incorporeal interest in another's possessory estate in land, entitling the holder of the easement to make some use of the other's property.")

52.     Because the Underlying Complaint does not allege "bodily injury", "property damage" or "personal and advertising injury", there is no coverage under the Ohio Policies for the Shah Action.

53.     Further, in order to qualify for coverage under the Ohio Policies, the Complaint against the insured must contain allegations of an "occurrence" under the policy.

54.     The term "occurrence" is defined, in relevant part, to mean an "accident."

55.     The Underlying Complaint alleges intentional acts.

56.     More specifically, the Underlying Complaint alleges that Addisville was aware of the easement, and knowingly and intentionally violated the easement and obstructed and encroached upon the Shahs' rights under that easement.

57.     Even assuming the Underlying Complaint's allegations could reasonably be read as an "occurrence" and the damages alleged to be "property damage", all of which is denied, the conduct alleged falls under the scope of exclusions which bar coverage for this matter.

58.     Pursuant to exclusion 2.a. in the Ohio Security Policy and exclusion IV.A. in the Ohio Casualty Umbrella Policy, there is no coverage for "bodily injury" or "property damage" expected or intended from the standpoint of the insured.

59.     The Underlying Complaint describes intentional acts or omissions by Addisville.

60.     The Underlying Complaint alleges that Addisville tried to convince the Shahs to modify and/or vacate the easement and when they would not agree to do so, Addisville went ahead and obstructed and encroached upon the Shahs' rights under the easement anyway.

61.     Any "bodily injury" or "property damage" allegedly sustained by the Shahs resulted from or could reasonably be expected to result from the intentional acts of Addisville.

62.     As a result, the claims asserted in the Underlying Complaint are excluded from coverage under the Ohio Policies.

WHEREFORE, Plaintiffs, Ohio Security Insurance Company and Ohio Casualty Insurance Company, respectfully request that this Court enter:

(a)     An Order declaring that Plaintiffs are not obligated to defend Addisville Commons LP in connection with the civil action filed in the Court of Common Pleas, Bucks County, Pennsylvania, filed as Civil Action No. 2018-00937-0;

(b)     An Order declaring that Plaintiffs are not obligated to pay any judgment entered against Addisville Commons LP in connection with the civil action filed in the Court of Common Pleas, Bucks County, Pennsylvania, filed as Civil Action No. 2018-00937-0; and

(c)     An Order for such other or alternative relief consistent with the claims and causes asserted in this Complaint.

## RELIEF REQUESTED

WHEREFORE, the Plaintiffs, Ohio Security Insurance Company and Ohio Casualty Insurance Company pray that this Honorable Court declare and adjudicate the rights and

liabilities of the parties regarding the Ohio Security Policy and Ohio Casualty Umbrella Policy, together with the following relief:

    (a)    Declaring the rights and obligations of Plaintiffs under the Ohio Policies as respects the Shah Action;

    (b)    Declaring that Plaintiffs do not owe a duty to defend Addisville in connection with the Shah Action;

    (c)    Declaring that Plaintiffs do not owe a duty to indemnify Addisville in connection with the Shah Action; and

    (d)    That this Court grant such other and further relief as it deems just and equitable.

POST & SCHELL, P.C.

Dated:  08/02/18        By:   s/Stacey M. Zavalas

                       John C. Sullivan
                       Stacey M. Zavalas
Four Penn Center – 13th Floor
1600 John F. Kennedy Boulevard
Philadelphia, PA  19103
Phone:  (215) 587-1000
Fax:  (215) 587-1444
E-mail:  jsullivan@postschell.com
        szavalas@postschell.com
Attorneys for Plaintiff,
Ohio Security Insurance Company and Ohio Casualty Insurance Company